Anderson, J.,
delivered the opinion and decrees of the court.
This day came again the parties, by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion as follows, to wit:
It appears from the decree of March, 1877, that all the debts of the company, except a trifling amount, have been paid, and that the balance in the hands of the receiver, or his attorney, will be sufficient to pay the same, together with any costs or expenses incurred by the special receiver in the discharge of his duties; consequently the further collection required to be made are for distribution amongst the stockholders as they may be severally entitled, which should have beed ascertained before further collections were ordered to be made.
It also appears from the report of Master Commissioner L. N. Huck, filed October 15th, 1875, to which there was no exception, and which was subsequently confirmed by *246 courb that the available assets consists of certain notes and obligations given by the stockholders for their unpaid of stock, and that there are no other available assets, and it would seem inequitable that those who . . 1 . , are m arrear should be required to pay up m good money t° create a fund for distribution upon terms of equality amongst those stockholders who paid their subscription in Confederate money, which was greatly depreciated. There are three classes of stockholders: 1st, those who have paid up their stock, in whole or in part, before the war in good money; 2d, those who have paid up, in whole or in part, during the war in Confederate money; 3d, those who, at the end of the war, had paid nothing.
Upon what principle shall the stockholders’ accounts be settled, the amount of assets for distribution be ascertained, and division be made amongst them?
The court is of opinion that in the statement of the account of the stockholders with the company and ascertaining the assets, we cannot disregard payments that have been made in Confederate money.
These must stand, and the stockholder must be credited by his payments in Confederate money, without abatement. But in the statement of the account between the stockholders to ascertain what dividend each one shall be entitled to in the distribution of the assets, the payments of stock in Confederate money, whether in whole or in part of the shares, since the 1st of January, 1862, should be scaled as of the date of payment, and each stockholder shall receive his dividend of the assets in the proportion of his input thus ascertained.
The sum to be divided will be the aggregate of balances due from the stockholders severally, thus ascertained, including any funds in the hands of the court, in which each one will be entitled to share in proportion to his input, ascertained as hereinbefore indicated.
By this mode of stating the account, each stockholder *247 gets a dividend in the precise proportion of his actual input, rating the Confederate money at its value when paid.
The stockholders being parties to the suit—and if any of them are not they should be made parties—accounts should be ordered and taken preparatory to the division upon the principle hereinbefore declared, and the stockholders in arrear should not be required to pay until the accounts are taken and the dividend of each stockholder ascertained.
Each stockholder in arrear should then be credited with his dividend, and be ordered to pay into the hands of the receiver the balance due on his stock, to be divided amongst the other stockholders in the proportion of their respective dividends.
Upon this plan and mode of proceedure, the whole matter in controversy can be finally adjusted in this suit more to the advantage of all parties concerned and in accordance with justice, than by the institution of separate actions at law against the stockholders, which is unnecessary and would not be proper or allowable under the circumstances, a court of equity being the proper forum for the adjudication and settlement of the matters in dispute between the parties.
The court is, therefore, of opinion and doth decree and order that the decree of the 27th day of March, 1877, and the decree on which it is founded, or which it revives and puts in operation, so far as they require a further collection of money from stockholders on stock account, or is in any other respect inconsistent with this opinion and order, be reversed and annulled, and that the appellees pay to the appellants their costs expended in the prosecution of their appeal here.
And this cause is remanded to the circuit court of Frederick county to be further proceeded with, in conformity with the principles herein declared, in order to final decree.
All of which is ordered to be certified to the said circuit court of Frederick county.
*248 a§a^n? on *he 10th of October, 1879, on motion, the decree pronounced in this cause during the present on the 2d inst., requiring the appellees to pay the costs incurred by the appellants in the prosecution of their appeal here, is modified so as to except from the appellees hable the appellees Conway Eobinson, J. L. Bacon, the Virginia State Insurance Company, Wm. L. Brent, secretary; Vm. Byrd, special receiver; The Insurance Company of the Valley of Virginia, Eichard E. Brown; Hugh Sidwell’s personal representative and Eichard Sid-well’s administrator—it appearing to the court that the reversal of the decree of the court below is not to their prejudice.
"Which is ordered to be certified to the said circuit court of Frederick county.
Decree reversed.